IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KAILYN WINFREY-GORZEK**<br><br>Plaintiff,<br><br>v.<br><br>**DOUGLAS COUNTY CASA, INC.**<br>Serve Registered Agent:<br>Erick Vaughn<br>1009 New Hampshire, Ste. A & B<br>Lawrence, KS 66044<br><br>Defendant. | Case No. _____ |

## COMPLAINT

COMES NOW Plaintiff Kailyn Winfrey-Gorzek, by and through counsel, and this Complaint against Defendant Douglas County Casa, Inc. (hereinafter referred to as "Casa"), states and alleges as follows:

### NATURE OF THE CLAIMS

1. This matter is an action for legal and equitable relief to redress the deprivation of Plaintiff's civil rights pursuant to 42 USC § 2000e *et seq.* and 42 U.S.C. §1981, and for retaliation in violation of 42 U.S.C. § 1981.

2. Defendant is a not-for-profit corporation, existing under the laws of the State of Kansas, and with its principal office located at 1009 New Hampshire, Ste. A, Lawrence, KS 66044. Defendant is authorized to do business in the State of Kansas with its registered agent, Erick Vaughn, located at 1009 New Hampshire, Ste. A, Lawrence, KS 66044.

3. At all times pertinent hereto, all employees and agents of Defendant were acting in their individual capacity and also as agents of Defendant within the course and scope of their

1

employment and authority in furtherance of the business of Defendant. All the acts and omissions of the employees of Defendant are imputed to their employer who is liable for such acts and omissions.

4. Plaintiff is an individual resident of Johnson County, Kansas, who, at all times mentioned herein, was employed by Defendant at its location in Lawrence, Kansas.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims enumerated herein pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d) because Defendant maintains consistent and continual contact in the State of Kansas, conducts significant amounts of business transactions, and maintains a business and physical presence within the State of Kansas.

## ADMINSTRATIVE PROCEEDINGS

7. On or about October 3, 2022, Plaintiff timely filed a charge of race and disability discrimination and retaliation against Defendant with the Kansas Human Rights Commission. A copy of Plaintiff's charge(s) of discrimination is attached hereto and by this reference is made a part hereof. *See* Exhibit A.

8. Plaintiff's Right to Sue Notice from the U.S. Equal Employment Opportunity Commission is dated August 2, 2023. A copy of Plaintiff's notice is attached hereto. *See* Exhibit B.

9. This action has been timely filed with this Court and Plaintiff has fully complied with all administrative prerequisites prior to the filing of this action.

## FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

10. At all times mentioned herein, Plaintiff was lawfully employed by Defendant for roughly 7 months starting from on or about January 2021, until her discharge on or about August 18, 2022.

11. At all times herein, within Defendant policies, is an Anti-Harassment Policy prohibiting harassment based upon race, color, sex, and disability (among other categories).

12.     At all times herein, Defendant is governed by the State of Kansas' Accommodation and Nondiscrimination Policy, which states it is the policy to "…assure equal opportunities and encouragement to every citizen regardless of race, religion, color, sex, disability, national origin or ancestry, in securing and holding, without discrimination, employment in any field of work or labor for which a person is properly qualified."

## DISABILITY DISCRIMINATION

13.     Plaintiff was diagnosed with Endometriosis prior to her employment with Defendant.

14.     Plaintiff was hired and managed by a former associate, Erick Vaughn ("Vaughn"), who was fully informed and aware of Plaintiff's chronic medical condition at the time of her hiring.

15.     Plaintiff was assured, upon her hiring, that she would be able to take the time off as needed to appropriately attend to and treat her symptoms from her medical condition.

16.     Plaintiff was sometimes forced to miss work, when her symptoms became unbearable, and Plaintiff could not perform her duties or was forced to seek treatment at a nearby hospital emergency room.

17.     On or about June 2, 2022, Plaintiff underwent an employee review, for which she received either "meets expectations" or "exceeds expectations" in every category. Additionally, Plaintiff received no instructions, comments or other evaluations which stated or indicated that Plaintiff was not adequately performing her job duties.

18.     Shortly after her review, Plaintiff was forced to undergo an unanticipated, emergency surgery related to her medical condition.

19.     Immediately upon her starting to recover from that surgery, Vaughn began treating Plaintiff differently.

20.     Vaughn commented to Plaintiff that he was surprised that Plaintiff was "still sick" after her surgery.

3

21. As Plaintiff was forced to continue to seek treatment, her conditions of employment were modified by Vaughn. Plaintiff was instructed to send him periodic updates when she was away from her desk, noting her whereabouts and her intended tasks for the time; Plaintiff was the only employee who was required to complete these updates.

22. Plaintiff requested to work remotely due to her chronic illness, as other colleagues in similar coordinator positions were allowed to work remotely almost exclusively. However, Plaintiff was denied and forced to work in the office for the majority of the work week.

23. On or about July 7, 2022, Vaughn also informed Plaintiff that there were "grumblings" around the office about her illness. Despite Plaintiff being the only employee in a similarly situated position, who was required to work in the office, Mr. Vaughn stated that Plaintiff's colleagues were upset that she was away from the office "so much".

24. On or about July 21, 2022, despite being exceedingly ill, Plaintiff worked in the office from fear that she would be reprimanded if she asked to work remotely. During a meeting with Vaughn, Vaughn yelled at Plaintiff, stating he was "just so frustrated" with her and that her "being here like this is a waste of his time", clearly indicating her medical condition and her current symptoms of the same.

25. Vaughn also stated to Plaintiff that he "…really just wonder[s] if [she was] capable of working a full-time job".

26. Vaughn's targeted treatment of Plaintiff continued, with increased direct and passive comments directed to Plaintiff, regarding her medical condition and associated symptoms and treatments.

27. As Vaughn's attitude towards Plaintiff markedly deteriorated, he became openly passive-aggressive and hostile, and rumors about Plaintiff's private medical condition began spreading throughout the office.

28.     On July 7, 2022, Erik Vaughn informed Plaintiff that there were "grumblings" amongst the other employees regarding her illness and associated absences from work, despite the fact that Plaintiff was the only employee in her position who was expected to work in the office for the majority of the work week; all other employees similarly situated were fully remote and only had to report to the office for occasional in-person meetings.

29.     Vaughn began telling Plaintiff that he was tired of being forced to "cover for her" when other employees complained about her being absent due to illness.

30.     Plaintiff notified Vaughn that she was beginning a new medical treatment, following her recent medical procedure and she could experience side effects from the treatment, which would affect her ability to commute to the office.

31.     Plaintiff requested reasonable accommodation due to her illness. Specifically, she asked whether she could work remotely due to possible side effects, and her home is closer to her doctor's office for follow-up appointments.

32.     Vaughn informed Plaintiff that he no longer trusts Plaintiff, since he thought her health condition would improve after the surgery, and he does not know what to believe. Therefore, she had to work in the office, but could work remotely only on Mondays and Fridays.

33.     Plaintiff was also subjected to a new policy reserved solely for her. If Plaintiff was feeling ill or experiencing side effects from beginning her new medical treatment and could not commute, Plaintiff must call Vaughn, so he can "hear how she sounds", and communication via text message or email was no longer appropriate. If Vaughn did not answer the phone, Plaintiff was instructed to leave a message on his voicemail. Plaintiff was required to account for her whereabouts, during work hours, despite no other employees being asked or required to do so.

34.     For the next several weeks, Plaintiff was being nitpicked for almost any action and the work environment became increasingly hostile.

35. Plaintiff also made numerous complaints to Vaughn regarding racially bigoted actions she had suffered at the hand of other employees.

36. On several occasions, two fellow employees began touching Plaintiff's hair without her consent, or making comments about whether her hair is "fake" and whether she washes her hair, because Plaintiff is an African American woman with a natural hairstyle; when Plaintiff informed Vaughn of these incidents and what she was experiencing, Vaughn informed Plaintiff that it was her responsibility, not his, to tell other employees that they should not be racially insensitive or bigoted towards her.

37. Plaintiff remarked to Vaughn that she was the only African American employee at that office and that as the only person of color in the office, she did not feel safe to express herself and had concerns with the environment.

38. Vaughn proceeded to have Plaintiff practice in his office, by saying "do not touch my hair", with a firmer and more aggressive voice. Plaintiff, feeling humiliated, repeated the phrase numerous times in front of Vaughn.

39. On or about August 16, 2022, Plaintiff received a message from Vaughn, stating that he believed, subsequent to her appearance in a virtual meeting that morning, that Plaintiff may be "too ill to carry out her job duties".

40. Upon returning to the office on August 18, 2022, during a staff meeting, Plaintiff was embarrassingly and purposely interrupted and cut off by Vaughn as she was speaking in front of her colleagues.

41. Plaintiff attended additional meetings for the rest of the day. During a break, Plaintiff asked Vaughn for assistance completing the company health insurance form, as her previous insurance had recently lapsed following her birthday.

42. Plaintiff again explained to Vaughn that she is in the middle of a three-part series shot to help with her chronic condition. Plaintiff completed the form and proceeded to her next meeting, related to a grant audit that assists with funding. Plaintiff received very positive reviews from the auditor during the meeting.

43. Following the meeting with the grant auditor, Plaintiff was summarily informed by Vaughn, with no warning, that she was terminated as of that day, despite her exemplary job performance and recent accomplishment of helping secure the grant funding just minutes earlier.

44. Plaintiff was told by Vaughn, "it's just not working out for me" and that she had missed too many deadlines. When Plaintiff inquired about the deadlines she missed, Vaughn replied that she has missed turning in her weekly to-do list, another arbitrary policy and task that only applied to Plaintiff but was not required of her colleagues.

45. Vaughn distributed an email to all other employees that Plaintiff no longer worked with the company, further stating that he could answer whatever questions, and that he realized many would not understand, as he did not understand, himself.

46. At all times herein, Plaintiff complied with the requests and requirements of Defendant.

## COUNT I – VIOLATION OF ADA

47. Plaintiff adopts and incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

48. During the course and scope of Plaintiff's employment, Defendant's agents, employees and representatives, acting within the course and scope of their employment, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his disability, in violation of the Americans with Disabilities Act, 42 U.S.C.A. § 12101 *et seq*.

49. Plaintiff is a qualified individual to be covered by the Americans with Disabilities Act, and was found to be able to perform the essential functions of her work.

50.     The harassment and discrimination shown through the limitations that adversely affected the status of employment, termination, and the unfair and unregulated tendencies to not follow the anti-harassment policies and laws, by Defendant's management had the purpose and effect of unreasonably interfering with Plaintiff's work performance thereby creating an abusive, hostile, offensive and intimidating work environment.

51.     Plaintiff was not provided equal treatment as other employees, who did not have a disability, could choose whether they wanted to exclusively work remotely.

52.     Defendant violated Plaintiff's civil rights by unlawful treatment and terminating Plaintiff's employment based upon Plaintiff's disability, intimidation based upon Plaintiff's disability, and denial of the same terms and conditions of employment including job restructuring and equal protection given to other employees but denied to Plaintiff because of Plaintiff's disability.

53.     The actions and conduct of Defendant's agents, employees and representatives, acting within the course and scope of their employment, created an abusive, hostile, offensive and intimidating work environment by allowing disability discrimination by supervisors and management staff, unfair and unregulated tendencies to not follow anti-harassment practices, and discriminatory punishment practices of management, thereby detrimentally affecting Plaintiff.

54.     The ratification of disability discrimination by supervisors and management staff, unfair and unregulated tendencies to not follow anti-harassment practices, and discriminatory punishment practices of management would have detrimentally affected a reasonable person of the same disability in the same or similar circumstances as Plaintiff.

55.     Management level employees knew or should have known of the unlawful treatment and disability discrimination problems described herein but failed to address the problems and further failed to practice effective and appropriate procedures to stop and remedy the disability discrimination.

56. Defendant fostered a hostile and abusive work environment where Plaintiff worked by failing to provide an effective disability discrimination training program for supervisors, managers and employees, in general.

57. The conduct of Defendant and Defendant's supervisors, managers and employees, in treating or allowing other staff to treat Plaintiff unlawfully because of her disability was severe and pervasive enough to create a work environment that a reasonable person under the same or similar circumstances would consider hostile and abusive.

58. By failing to comply with the Americans with Disabilities Act, 42 U.S.C.A. § 12101 *et seq.*, as related to Plaintiff's disability, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

59. Due to Plaintiff's disability, Plaintiff was unfairly disciplined and ultimately unlawfully discharged.

60. Defendant's actions against Plaintiff were intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

61. At the time Defendant terminated Plaintiff, Defendant knew that such termination due to Plaintiff's disability was unlawful.

62. Plaintiff has been damaged as a direct and proximate result of Defendant's actions. Plaintiff has suffered injuries including, but not limited to:

    a. emotional pain and suffering;

    b. insult;

    c. mental distress;

    d. embarrassment;

    e. humiliation;

    f. lost wages;

      g.  anxiety; and

      h.  inconvenience.

WHEREFORE, Plaintiff requests that this Court, after a trial by jury of her claims, enter Judgment against Defendant granting such relief as may be appropriate, including: a finding that he has been subjected to unlawful conduct prohibited by 42 U.S.C.A. § 12101 *et seq.;* reinstatement; injunctive orders; such actual and noneconomic damages as are fair and reasonable; Plaintiff's reasonable attorneys' fees, expert witness fees and expenses as provided by 42 U.S.C.A. § 12101 *et seq.,* the costs of this action; and for such further relief as the Court deems just and proper.

## COUNT II – RETALIATION IN VIOLATION OF ADA

63.    Plaintiff adopts and incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

64.    This action is brought pursuant to 42 U.S.C. § 2000e et seq.

65.    Plaintiff's request for reasonable accommodations, due to her chronic illness constituted a protected activity.

66.    Due to Plaintiff's request for reasonable accommodations, Defendant retaliated against Plaintiff resulting in her being unfairly disciplined and discharged.

67.    Despite Plaintiff requesting reasonable accommodation, which included request to work remotely at times due to her illness and inability to drive when taking certain medication, Plaintiff experienced disparate treatment as compared to other employees, as her colleagues, none of whom were disabled, were allowed to work remotely almost exclusively and Plaintiff was forced to work in the office.

68.     At all times mentioned herein, the above-mentioned management and supervisory staff of Defendant were agents, servants and employees of Defendant acting within the course and scope of their employment.

69.     Defendant's actions against Plaintiff were intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

70.     At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation and interference with employment was unlawful.

71.     Plaintiff has been (and continues to be) damaged as a direct and proximate result of Defendant's actions. Plaintiff has suffered injuries including, but not limited to:

   a. emotional pain and suffering;

   b. insult;

   c. mental distress;

   d. embarrassment;

   e. humiliation;

   f. lost wages;

   g. anxiety; and

   h. inconvenience.

WHEREFORE, Plaintiff requests that this Court, after a trial by jury of his claims, enter Judgment against Defendant granting such relief as may be appropriate, including: a finding that he has been subjected to unlawful conduct, including disability discrimination, harassment and retaliation, prohibited by U.S.C.A. § 12101 *et seq.;* reinstatement; injunctive orders; such actual and noneconomic damages as are fair and reasonable; Plaintiff's reasonable attorneys' fees, expert witness fees and expenses as provided by 42 U.S.C. § 2000e 5(k), the costs of this action; and for such further relief as the Court considers just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

                      Respectfully submitted,

                      **PK LAW GROUP**

                      /s/ *Phillip C. Strozier*
                      PHILLIP C. STROZIER, KS #29179
                      2015 Grand Blvd.
                      Kansas City, MO 64108
                      (816) 929-8777 Phone
                      (816) 929-8791 Fax
                      pstrozier@pklawgroup.com
                      **ATTORNEY FOR PLAINTIFF**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
KAILYN WINFREY-GORZEK

**DEFENDANTS**
DOUGLAS COUNTY CASA, INC.
Serve Registered Agent Erick Vaughn

**(b)** County of Residence of First Listed Plaintiff: Johnson CO, KS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Douglas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Phillip C. Strozier
PK Law Group
2015 Grand Boulevard

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CIVIL RIGHTS**
- [X] 445 Amer. w/Disabilities - Employment

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C.A. § 12101 et seq.

Brief description of cause:
Plaintiff was discriminated against by her employer on the basis of her medical condition as well as her race

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 10/30/2023

SIGNATURE OF ATTORNEY OF RECORD: Phillip C. Strozier

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **KAILYN WINFREY-GORZEK**<br><br>　　　Plaintiff,<br><br>v.<br><br>**DOUGLAS COUNTY CASA, INC.**<br><br>　　　Defendant. | Case No. _____ |

## DESIGNATION OF PLACE OF TRIAL

COMES NOW Plaintiff, by and through counsel, files this Designation of Place of Trial and hereby designates Kansas City, Kansas, as the location for the trial in this matter.

Respectfully Submitted,

**PK LAW GROUP**

/s/ *Phillip C. Strozier*
PHILLIP C. STROZIER, KS #78957
2015 Grand Boulevard
Kansas City, MO  64108
(816) 929-8777 Phone
(816) 929-8791 Fax
pstrozier@pklawgroup.com
**ATTORNEY FOR PLAINTIFF**

1